UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : |
| CONTENTS IN ACCOUNT NUMBER XXXXXXX41-04 AT SIKORSKY FEDERAL CREDIT UNION HELD IN THE NAME OF JOHN A. ORTIZ/DIANE ORTIZ, | : Misc. Civil No. |
| Defendant. | : |

## AFFIDAVIT AND APPLICATION FOR SEIZURE WARRANT

I, Colin M. Burns, being duly sworn, do hereby depose and state:

1. I am a Special Agent with the Internal Revenue Service - Criminal Investigation ("IRS-CI"), United States Department of the Treasury, and have been so employed for approximately six years. I graduated from the Federal Law Enforcement Training Center in Glynco, Georgia, where I received extensive training in the area of criminal investigations conducted by IRS-CI, including the investigation of financial crimes, such as tax evasion, money laundering, and currency structuring violations. I also received training in the laws of search and seizure.

2. My duties as a Special Agent include investigating violations of the Internal Revenue laws (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), and the Bank Secrecy Act (Title 31, United States Code), and related offenses. As a Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of criminal laws of the United States and thereby authorized to request the issuance of federal

1

seizure warrants. As a Special Agent, I have performed complex financial investigations and have participated in the execution of numerous search and seizure warrants in the capacity as affiant.

3. This Affidavit is submitted in support of a seizure warrant for the contents of the following account held at Sikorsky Financial Credit Union:

- Money Market Savings Account - Account Number XXXXXXX41-04 in the name 'John A. Ortiz/Diane Ortiz'.

4. As set forth below, there is probable cause to believe that the contents of the above-named bank account are subject to seizure and forfeiture pursuant to Title 31, United States Code, Section 5317(c)(2) and Title 18, United States Code, Sections 981(a)(1)(A) and 984, as property involved in, or traceable to, transactions in violation of Title 31, United States Code, Section 5324(a)(3).

5. The information contained in this affidavit is based on statements and information from witnesses, my review of bank records and other documentary evidence, my personal knowledge and involvement in the investigation, information provided to me by fellow law enforcement officers, and my training and experience as a criminal investigator. Because this affidavit is being submitted for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth herein only those facts which I believe to be necessary to establish probable cause to support the warrant requested herein.

## Background of the Structuring Statutes

6. Title 31, United States Code, § 5324(a), states as follows:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section -
>
> > (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section;
> >
> > (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) or 5325 or any regulation prescribed under any such section, that contains a material omission or misstatement of fact; or
> >
> > (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

This provision is aimed in part at individuals who cause financial institutions either to fail to file a Currency Transaction Report ("CTR") or to file a false CTR. Structuring requires that an individual knew of relevant bank reporting requirements for currency transactions in excess of $10,000, that an individual structured his/her transactions in amounts of $10,000 or less for the purpose of evading those reporting requirements, and that the individual acted with knowledge that his/her conduct was unlawful. The offense or attempted offense must have occurred with a domestic financial institution.

7. Section 5313(a), along with 31 C.F.R. § 103.22, requires a domestic financial institution to file a CTR for any transaction in currency of more than $10,000. According to § 103.22, "multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day." Banks and credit unions are required to file a report for each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which was a transaction in currency of

more than $10,000.00. Sikorsky Financial Credit Union and Wachovia Bank, and other banks are financial institutions as defined in 31 U.S.C. § 5312(a)(2)(B).

8. The Secretary of the Treasury requires each financial institution to obtain identifying information from individuals depositing $10,000.00 or more. When a deposit exceeds $10,000.00, bank personnel are required to complete a CTR, which is also known as IRS Form 4789. Banks record information such as the identity of the individual who conducted the transaction with the bank, and the individual or organization for whom the transaction was completed. Transactions made within one day by or for one person are required to be reported on IRS Form 4789 as a single transaction when they aggregate over $10,000.00. Reports of currency transactions are required to be filed with the Internal Revenue Service ("IRS") on or before the fifteenth day following the day the transaction occurred.

9. 31 C.F.R § 103.18, along with 12 C.F.R. § 208.62, requires a domestic financial institution to report any suspicious transaction of $5,000.00 or more which may be relevant to a possible violation of law or regulation. A financial institution may file a Suspicious Activity Report ("SAR") with the Treasury Department, usually within thirty days of the suspected activity. The bank must also collect and maintain supporting documentation for the SAR for a period of five years.

10. Pursuant to Title 31, United States Code, Section 5317(c), and Title 18, United States Code, Sections 981 and 984, any property, real or personal, involved in a transaction or attempted transaction in violation of Section 5313(a) or 5324(a) of Title 31, or any property traceable to such property, is subject to forfeiture to the United States.

**Background of Investigation**

11.     John Ortiz is the owner of City Line Towing, LLC aka Cityline Towing ("CLT"). The Employer Identification Number ("EIN") for CLT is 76-0773515. John Ortiz is listed as the sole member and manager of CLT with the Connecticut Secretary of State, with an address of 23 Sage Avenue, Bridgeport, CT 06610. Witnesses have informed law enforcement that John Ortiz's wife, Diane Ortiz, works in the office of CLT.

12.     CLT is a towing company that provides services to the greater Fairfield County area of Connecticut. Information from a witness indicates that John Ortiz owns and operates numerous tow trucks at CLT. John Ortiz also operates other businesses affiliated with CLT. These businesses include:

- City Line Auto Sales and Service, Inc., EIN: 06-1360619
- City Line Auto Repair, LLC, EIN: 41-2128927
- City Line Enterprises, LLC, EIN: 41-2128924
- City Line Towing & Recovery, LLC, EIN: 41-2128922

13.     In addition to the CLT and the other "City Line" businesses, John Ortiz is the owner of the following limited liability companies ("LLCs"). These LLCs, in turn, are the owners of real estate properties:

- 2440 Barnum Avenue, LLC, EIN: 41-2128924
- 817 Success Avenue, LLC, EIN: 06-1630292
- J & B Property, LLC, EIN: 01-0870208

5

14. This investigation has revealed that during the period, May 3, 2006 through October 7, 2009, John Ortiz and/or Diane Ortiz made ninety-three (93) structured transactions totaling $817,144.00, into John and Diane Ortiz's accounts located at Sikorsky Financial Credit Union and Wachovia Bank. Eighty-five (85) of these deposits were in amounts that were $9,000.00, which totaled $765,000.00.

15. Almost all of these deposits occurred at Sikorsky Financial Credit Union and Wachovia Bank branches located near Ortiz's place of employment in Bridgeport, Connecticut, including Shelton and Trumbull. Some of these transactions occurred at a Sikorsky Financial Credit Union branch located in Stratford, Connecticut, the town in which the Ortiz's reside.

## Summary of Bank Accounts

16. Records received from Sikorsky Financial Credit Union indicate that John and Diane Ortiz are the owners of several bank accounts at this financial institution. The following lists the specific account into which the currency structuring violations occurred:

- Money market savings account #XXXXXXX41-04, opened on January 3, 2007 in the name 'John A. Ortiz'.

17. Subsequent to the opening of the account, John and Diane Ortiz submitted a Joint Owner Change application, which added Diane Ortiz as a joint owner of account #133760941-04. The Joint Owner Change application was signed by Diane Ortiz on February 13, 2007.

18. Records received from Wachovia Bank indicate that both John and Diane Ortiz are the signers on several bank accounts at this financial institution. The following lists the specific account into which the currency structuring violations occurred:

- Personal Line of Credit account #XXXXXXXXXXX9400, opened in the name of 'John A. Ortiz'.

**Summary of Structured Transactions at Sikorsky Financial Credit Union**

19. Between April 18, 2007 and October 7, 2009, John and Diane Ortiz structured seventy-two (72) cash deposits totaling $628,144.00 into the Sikorsky Financial Credit Union money market savings account #XXXXXXX41-04. Of these 72 cash deposits, sixty-four (64) consisted of cash deposits of $9,000.00, which totaled $576,000.00. Many of the cash deposits were conducted on consecutive business days. The following is an analysis of the $628,144.00 in structured cash deposits made to John and Diane Ortiz's money market savings account at Sikorsky Financial Credit Union:

| Day | Date | Amount | Make-up of Deposit |
|---|---|---|---|
| Wednesday | 04/18/2007 | $ 9,000.00 | Not Available |
| Friday | 04/20/2007 | $ 9,000.00 | Not Available |
| Monday | 04/23/2007 | $ 9,000.00 | Not Available |
| Wednesday | 04/25/2007 | $ 9,000.00 | Not Available |
| Monday | 06/25/2007 | $ 9,000.00 | Not Available |
| Monday | 08/06/2007 | $ 9,000.00 | Not Available |
| Monday | 08/13/2007 | $ 9,000.00 | Not Available |
| Wednesday | 09/12/2007 | $ 9,000.00 | Not Available |
| Wednesday | 10/10/2007 | $ 9,000.00 | Not Available |
| Thursday | 07/17/2008 | $ 9,000.00 | Not Available |
| Tuesday | 07/29/2008 | $ 9,000.00 | Not Available |
| Friday | 08/15/2008 | $ 9,000.00 | Not Available |
| Monday | 08/18/2008 | $ 9,000.00 | Not Available |
| Wednesday | 08/27/2008 | $ 9,000.00 | Not Available |
| Friday | 10/03/2008 | $ 9,000.00 | 90 - $100's |
| Monday | 10/06/2008 | $ 9,000.00 | 90 - $100's |

| Day | Date | Amount | Denominations |
|---|---|---|---|
| Tuesday | 10/07/2008 | $ 9,000.00 | 90 - $100's |
| Wednesday | 10/08/2008 | $ 9,000.00 | 90 - $100's |
| Thursday | 10/09/2008 | $ 9,000.00 | 90 - $100's |
| Friday | 10/10/2008 | $ 9,000.00 | 90 - $100's |
| *Tuesday | 10/14/2008 | $ 2,644.00 | Not Available |
| Wednesday | 10/15/2008 | $ 9,000.00 | 90 - $100's |
| Thursday | 10/16/2008 | $ 9,000.00 | 90 - $100's |
| Saturday | 10/18/2008 | $ 9,000.00 | 87 - $100's<br>6 - $50's |
| Thursday | 10/23/2008 | $ 9,000.00 | 90 - $100's |
| Friday | 10/24/2008 | $ 9,000.00 | 30 - $100's<br>120 - $50's |
| Monday | 10/27/2008 | $ 9,000.00 | 50 - $100's<br>100 - $50's |
| Wednesday | 11/19/2008 | $ 9,000.00 | Not Available |
| Friday | 12/05/2008 | $ 8,000.00 | Not Available |
| Wednesday | 06/03/2009 | $ 9,000.00 | 88 - $100's<br>4 - $50's |
| Friday | 06/05/2009 | $ 9,000.00 | Not Available |
| Monday | 06/08/2009 | $ 9,000.00 | 90 - $100's |
| Wednesday | 06/10/2009 | $ 9,000.00 | 90 - $100's |
| Friday | 06/12/2009 | $ 9,000.00 | 90 - $100's |
| Tuesday | 06/16/2009 | $ 7,000.00 | 60 - $100's<br>20 - $50's |
| Monday | 06/22/2009 | $ 9,000.00 | 71 - $100's<br>91 - $20's<br>8 - $10's |
| Thursday | 06/25/2009 | $ 9,000.00 | 90 - $100's |
| Saturday | 06/27/2009 | $ 9,000.00 | 76 - $100's<br>12 - $50's<br>40 - $20's |
| Monday | 06/29/2009 | $ 8,000.00 | 50 - $100's<br>1 - $50<br>147 - $20's<br>1 - $10 |
| Tuesday | 06/30/2009 | $ 9,000.00 | 65 - $100's<br>28 - $50's<br>55 - $20's |
| Wednesday | 07/01/2009 | $ 9,000.00 | 80 - $100's<br>20 - $50's |

| Day | Date | Amount | Denominations |
|---|---|---|---|
| Thursday | 07/16/2009 | $ 5,500.00 | 38 - $100's<br>34 - $50's |
| Friday | 07/17/2009 | $ 9,000.00 | 78 - $100's<br>24 - $50's |
| Monday | 07/20/2009 | $ 9,000.00 | 84 - $100's<br>5 - $50's<br>14 - $20's<br>7 - $10's |
| Tuesday | 07/21/2009 | $ 9,000.00 | 74 - $100's<br>32 - $50's |
| Wednesday | 08/19/2009 | $ 9,000.00 | 66 - $100's<br>48 - $50's |
| Thursday | 08/20/2009 | $ 9,000.00 | 70 - $100's<br>40 - $50's |
| Friday | 08/21/2009 | $ 9,000.00 | 90 - $100's |
| Monday | 08/24/2009 | $ 9,000.00 | 67 - $100's<br>46 - $50's |
| Tuesday | 08/25/2009 | $ 9,000.00 | 40 - $100's<br>100 - $50's |
| Thursday | 08/27/2009 | $ 9,000.00 | 60 - $100's<br>52 - $50's<br>20 - $20's |
| Monday | 08/31/2009 | $ 8,000.00 | 60 - $100's<br>30 - $50's<br>25 - $20's |
| Tuesday | 09/01/2009 | $ 9,000.00 | 90 - $100's |
| Friday | 09/04/2009 | $ 9,000.00 | Not Available |
| Saturday | 09/05/2009 | $ 9,000.00 | 90 - $100's |
| Tuesday | 09/08/2009 | $ 7,000.00 | Not Available |
| Wednesday | 09/09/2009 | $ 9,000.00 | 90 - $100's |
| Thursday | 09/10/2009 | $ 9,000.00 | 90 - $100's |
| Friday | 09/11/2009 | $ 9,000.00 | 90 - $100's |
| Wednesday | 09/16/2009 | $ 9,000.00 | 90 - $100's |
| Friday | 09/18/2009 | $ 9,000.00 | 90 - $100's |
| Monday | 09/21/2009 | $ 9,000.00 | 90 - $100's |
| Wednesday | 09/23/2009 | $ 9,000.00 | 90 - $100's |
| Friday | 09/25/2009 | $ 9,000.00 | 90 - $100's |
| Saturday | 09/26/2009 | $ 9,000.00 | 90 - $100's |
| Monday | 09/28/2009 | $ 9,000.00 | 90 - $100's |
| Tuesday | 09/29/2009 | $ 9,000.00 | 90 - $100's |
| Wednesday | 09/30/2009 | $ 9,000.00 | 90 - $100's |

| | | | |
|---|---|---|---|
| Friday | 10/02/2009 | $ 9,000.00 | 90 - $100's |
| Saturday | 10/03/2009 | $ 9,000.00 | 90 - $100's |
| Monday | 10/05/2009 | $ 9,000.00 | 90 - $100's |
| Wednesday | 10/07/2009 | $ 6,000.00 | 60 - $100's |

**Total Cash Deposits** $ 628,144.00

### Summary of CTRs at Sikorsky Financial Credit Union

20. At no point during the period May 3, 2006, through October 7, 2009, did Diane or John Ortiz make a cash deposit or deposits in excess of $10,000 on a single day into their Sikorsky money market saving account # XXXXXXX41-04.

21. However, during that period eight (8) CTRs were filed by Sikorsky Financial Credit Union for various other reasons, as detailed below.

    a. On August 14, 2007, a CTR was filed for a cash transaction totaling $13,400.00. The transaction consisted of a split deposit, as $12,559.20 in cash was paid to John Ortiz's Visa credit card account #XXXXXXX41-16 and $840.80 in cash was deposited into the share draft/checking account #XXXXXXX41-90. The $12,559.20 cash payment was the only cash transaction in excess of $10,000 relating to one account conducted by the Ortiz's at Sikorsky during the period set forth above.

    b. Three (3) CTRs were filed as the Ortiz's deposited over $10,000.00 into more than one account on the same day (a split deposit).

        i. On September 2, 2008 a CTR was filed in the amount of $13,858.00, which resulted from the Ortiz's depositing $4,210.00 into their money market account #XXXXXXX41-04, depositing $2,730.00 into their Share Draft/Checking account #XXXXXXX41-90, and paying $6,917.42 to John Ortiz's Visa credit card account

#XXXXXXX41-16.

    ii. On October 2, 2009 a CTR was filed in the amount of $11,850.00, which resulted from the Ortiz's depositing $9,000.00 into their money market account #XXXXXXX41-04 and paying $2,850.00 to John Ortiz's Visa credit card account #XXXXXXX41-16.

    iii. On January 29, 2010 a CTR was filed in the amount of $10,300, which resulted from the Ortiz's depositing $5,700.00 into their money market account #XXXXXXX41-04 and paying $4,600.00 to John Ortiz's Visa credit card account #XXXXXXX41-16.

    c. Four CTRs were filed due to Sikorsky Financial Credit Union's internal record keeping procedures regarding the handling of deposits on weekends and holidays. Bank records and testimony from bank employees revealed that Sikorsky Financial Credit Union categorizes Saturday deposits as having been transacted the following Monday. Therefore, Saturday and Monday deposits are aggregated and categorized as having been transacted on Monday.

    i. On Saturday June 27, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04. On Monday, June 29, 2009 the Ortiz's conducted a cash deposit of $8,000.00 into their money market account #XXXXXXX41-04. These two cash deposits were aggregated and a CTR was filed on June 29, 2009, in the amount of $17,000.00.

    ii. On Saturday September 5, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04. On Tuesday,

September 8, 2009, the Ortiz's conducted a split cash deposit of $7,000.00 into their money market account #XXXXXXX41-04 and $1,350 into their share draft/checking account #XXXXXXX41-90. These cash deposits were aggregated and a CTR was filed on September 8, 2009 in the amount of $17,350.00. The Saturday and Tuesday deposits were aggregated as Monday, September 7, 2009 was Labor Day, a bank holiday.

    iii.    On Saturday September 26, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04, and on Monday, September 28, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04. These two cash deposits were aggregated and a CTR was filed on September 28, 2009, in the amount of $18,000.00.

    iv.    On Saturday October 3, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04, and on Monday, October 5, 2009, the Ortiz's conducted a cash deposit of $9,000.00 into their money market account #XXXXXXX41-04. These two cash deposits were aggregated and a CTR was filed on October 5, 2009 in the amount of $18,000.00.

22.    In addition, two (2) CTRs were filed by Sikorsky relating to years outside the scope of this investigation. On July 18, 2002, a CTR was filed in the amount of $10,320.00. It appears this CTR resulted from a split deposit conducted by Diane Ortiz into her share draft/checking account #XXXX10-90 and regular share account #XXXX10-00. On July 20, 2005, a CTR was filed in the amount of $10,344.00. It appears this CTR resulted from a split deposit conducted by Diane Ortiz into her share draft/checking account #XXXX10-90 and regular share account #XXXX10-00.

23.     As noted, although there were a total of eight CTRs filed by Sikorsky Financial Credit Union during the period from May 3, 2006 through October 7, 2009, neither John Ortiz nor Diane Ortiz conducted a cash deposit into their money market savings account #XXXXXXX41-04 in excess of $10,000.00 – the CTR filing requirement.

### Interviews with Sikorsky Financial Credit Union Employees

24.     Sikorsky bank employee, Jen Burns ("Burns"), filed a CTR relating to a cash deposit conducted by John Ortiz. In order to fill out the CTR, Burns needed John Ortiz's employment information and asked for his occupation. John Ortiz then asked Burns why she needed his information. Burns advised Ortiz that his information was required because of the amount of the deposit. Burns added that John Ortiz became upset because she asked for his license.

25.     Sikorsky bank employee, Sue Notar ("Notar"), completed a CTR relating to a cash deposit by Diane Ortiz. In order to fill out the CTR, Notar needed Diane's employment information and contacted Diane via telephone to obtain the information. During the telephone conversation Notar asked for Diane's occupation. Diane initially stated that she performed office work for her husband, John. Diane then advised Notar that her occupation was as a housewife. Notar advised Diane that Notar needed her occupation information because a report had to be filed. Notar believed that the John and Diane Ortiz are aware that a form is filed when a customer transacts in cash in excess of $10,000.00.

### Summary of Structured Transactions at Wachovia Bank

26.     On May 3, 2006, May 4, 2006 and May 5, 2006, John and/or Diane Ortiz structured

three $9,000.00 cash payments, totaling $27,000.00, on consecutive days to John Ortiz's personal line of credit account #XXXXXXXXXXXX9400 at Wachovia Bank.

27.     Between July 29, 2008 and October 1, 2008 John and/or Diane Ortiz made eighteen (18) structured cash payments, totaling $162,000.00 to John Ortiz's personal line of credit account #XXXXXXXXXXXX9400 at Wachovia Bank. Each cash payment was for $9,000.00 and some cash payments were on consecutive days. The following is an analysis of the $189,000.00 in structured cash payments made to John Ortiz's personal line of credit account #4XXXXXXXXXXXX9400 at Wachovia Bank:

| DATE | PAYMENT AMOUNT |
|---|---|
| 05/03/2006 | $ 9,000.00 |
| 05/04/2006 | $ 9,000.00 |
| 05/05/2006 | $ 9,000.00 |
| | |
| 07/29/2008 | $ 9,000.00 |
| 08/15/2008 | $ 9,000.00 |
| 08/18/2008 | $ 9,000.00 |
| 08/20/2008 | $ 9,000.00 |
| 08/27/2008 | $ 9,000.00 |
| 09/02/2008 | $ 9,000.00 |
| 09/03/2008 | $ 9,000.00 |
| 09/04/2008 | $ 9,000.00 |
| 09/05/2008 | $ 9,000.00 |
| 09/09/2008 | $ 9,000.00 |
| 09/10/2008 | $ 9,000.00 |
| 09/12/2008 | $ 9,000.00 |
| 09/16/2008 | $ 9,000.00 |
| 09/17/2008 | $ 9,000.00 |
| 09/19/2008 | $ 9,000.00 |
| 09/29/2008 | $ 9,000.00 |
| 09/30/2008 | $ 9,000.00 |
| 10/01/2008 | $ 9,000.00 |

| | |
|---|---|
| Total | $189,000.00 |

## Other Information

28.     Robert Velazquez ("Velazquez") was business partners with John Ortiz in CLT and the other aforementioned businesses. Velazquez stated that during this partnership, John Ortiz was responsible for handling the finances of the companies. Velazquez further advised that the companies primarily generated cash receipts and that Ortiz handled these cash receipts. Velazquez informed that Ortiz would deposit some cash from the business into the business account to cover expenses; however, Ortiz put the majority of the cash in a safe at the Ortiz's residence.

29.     Velazquez recalled an incident in 2001 at North American Bank, currently Webster Bank. Velazquez and Ortiz were conducting a cash deposit and were required to provide their licenses because the amount of the cash deposit exceeded $10,000.00.

30.     As noted, John and Diane Ortiz did not conduct a cash deposit on a single day in excess of $10,000.00 into their personal money market savings account at Sikorsky Financial Credit Union during the period discussed in this affidavit. Similarly, they did not conduct a cash payment on a single day in excess of $10,000.00 during the relevant period into the revolving line of credit account at Wachovia Bank. However, a review of information concerning their business account entitled 'City Line Towing, LLC' account #XXXXXXXXX9260 at Wachovia Bank, revealed that numerous CTRs were filed in connection with this account during this same time period. From May 3, 2006 through October 7, 2009, there were a total of thirty-six (36) CTRs filed by Wachovia, reflecting an aggregate total of $513,208.00. All of these CTRs

related to cash withdrawals conducted by the Ortiz's. During this time period there were no CTRs filed by Wachovia for cash deposits conducted by the Ortiz's.

31. Wachovia Bank employee, Veronica Mojica ("Mojica"), filed numerous CTRs relating to cash transactions conducted by John Ortiz. Mojica stated that she advised John Ortiz multiple times that a CTR was going to be filled out when she handled a cash transaction that required such paperwork. Mojica believed she first told this to John Ortiz approximately three years ago. Mojica advised that she had to collect certain information from John Ortiz to complete the CTR.

32. Wachovia Bank employee, Angela Fillmore ("Fillmore"), stated that in approximately January 2009, she handled a cash transaction for John Ortiz. Fillmore informed him that she had to complete a CTR because of this transaction.

**Conclusion**

33. Wherefore, IT IS HEREBY REQUESTED that Special Agents of the Internal Revenue Service be authorized to seize the defendant property, namely contents of account number XXXXXXX41-04 at Sikorsky Federal Credit Union held in the name of John Ortiz/Diane Ortiz. Probable cause exists that the contents of the account are subject to seizure and forfeiture pursuant to 31 U.S.C. § 5317(c)(2) and 18 U.S.C. §§ 981(a)(1)(A) and 984, as property involved in or traceable to, transactions in violation of 31 U.S.C. § 5324(a)(3).

34. Your affiant believes that public disclosure of the within affidavit and public disclosure of the existence of the seizure warrant that is requested herein may tend to compromise this investigation. Accordingly, your affiant respectfully requests that the Court direct the United States Attorney's Office to retain this affidavit, the warrant and the related application, and to

maintain said documents in a secure place until further order of a Court of competent jurisdiction, with the exception that copies of said documents may be disclosed to the officers executing the warrant, and to provide due notice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this ___ day of September, 2010

/S/
Colin M. Burns, Special Agent
Internal Revenue Service


Subscribed to and sworn before me on this _____ day of September, 2010

/S/
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE